# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3370
_____

United States of America

*Plaintiff - Appellee*

v.

Eric Virrueta

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Northern
_____

Submitted: June 14, 2024
Filed: November 15, 2024
_____

Before LOKEN, ERICKSON, and GRASZ, Circuit Judges.
_____

LOKEN, Circuit Judge.

Eric Virrueta pleaded guilty to possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1), reserving the right to appeal the denial of his motion to suppress evidence, including methamphetamine and marijuana, found in a warrantless search of the vehicle he was driving after a traffic

stop. Virrueta challenges the district court's[1] rulings that (i) the initial traffic stop was valid, (ii) the detaining officer did not impermissibly extend the traffic stop, and (iii) the ensuing search of the vehicle was supported by probable cause to believe it contained evidence of a crime and was permissible based on the consent of Virrueta's parole agent. Reviewing the district court's factual findings for clear error and its legal conclusions *de novo*, we uphold these rulings and therefore affirm. See United States v. Ford, 888 F.3d 922, 925 (8th Cir. 2018) (standard of review).

## I.  Background

Magistrate Judge Moreno held an evidentiary hearing on Virrueta's motion to suppress. The government presented testimony by arresting officer Ryan Fischer, a Corporal in the Watertown Police Department with fourteen years' experience in law enforcement, and by Kayla Oelkers, a parole agent for the State of South Dakota with eight years' experience who was assigned to supervise Virrueta's parole. Judge Moreno summarized their testimony at length in his Report and Recommendation that the motion be denied. In overruling Virrueta's objections to the Report and Recommendation, District Judge Kornmann stated, "[t]he magistrate obviously credited [Corporal Fischer's] testimony," adopted the Report and Recommendation, and denied the motion to suppress. The following summary is based on hearing testimony credited by the district court.

Corporal Fischer testified that on June 12, 2022, he was contacted by off-duty Detective Taylor Martens who reported that he had observed a female and an unknown Hispanic male attempt to send a money order at an area Walgreens, which Martens considered suspicious. Fischer knew that the female had "an extensive

---

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota, adopting the Report and Recommendation of the Honorable Mark A. Moreno, United States Magistrate Judge for the District of South Dakota.

history with illegal substances," so he searched the Walgreens area for her white Cadillac car but did not find it. That evening, Fischer drove to her residence and found her vehicle parked alongside a red Pontiac Grand Prix. Driving through the apartment complex parking lot to get the Grand Prix's license plate number, Fischer saw the woman and an unknown Hispanic male enter her apartment. Fischer checked the Grand Prix license plate number, learning that the vehicle's registered owner was a woman with the last name Virrueta, later found to be Virrueta's mother. Searching that name in Watertown's police database, Fischer found a booking photo and physical description that matched the Hispanic male Fischer saw walk into the female's apartment. Fischer sent the photo to Detective Martens, who confirmed it was the male he saw with the woman at Walgreens. An additional check revealed that Virrueta had no valid driver's license and was on state parole for a controlled substance offense.

Fischer then waited in a gravel drive near the apartment complex. About an hour later, the white Cadillac followed by the Grand Prix being driven by Virrueta drove past Fischer's vehicle. Knowing Virrueta was unlicensed, Fischer activated his emergency lights and siren and initiated a traffic stop. He approached the Grand Prix and informed Virrueta that he was pulled over for driving without a license. Fischer smelled a strong odor of raw marijuana emanating from the vehicle. Virrueta produced an expired insurance card. Fischer asked Virrueta to come back to the police vehicle while a traffic citation was completed. Virrueta rolled up his window, locked the Grand Prix, and removed a bottle of cologne that he carried to Fischer's police vehicle, where he left the passenger door open. Fischer directed Virrueta to close the door and inquired about the marijuana odor. Virrueta said he had smoked marijuana approximately one hour before the traffic stop, a violation of South Dakota law. Fischer asked Virrueta for consent to search the Grand Prix. Virrueta denied permission to search because the car belonged to his mother. Fischer moved Virrueta to the back seat of the patrol car. Another officer arrived at the scene.

-3-

Fischer called parole agent Oelkers and explained the situation. Oelkers recognized multiple parole violations -- being in Watertown when he agreed not to leave Sioux Falls without permission, driving without a license, and using drugs. The parole agreement required Virrueta to submit to a warrantless search of his person or vehicle "whenever reasonable suspicion is determined by a parole agent or law enforcement." Oelkers instructed Fischer to search Virrueta's person and vehicle. The two police officers then searched the Grand Prix, discovering a bag containing approximately two hundred twenty-nine grams of methamphetamine mixture, sixteen grams of marijuana, $3,000 cash, a glass pipe, and a digital scale. Virrueta's motion sought to suppress this evidence and statements he made during the traffic stop.

## II. Discussion

**A. The Traffic Stop.** Virrueta first argues that Corporal Fischer's initial traffic stop violated his Fourth Amendment right "to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle. . . . [T]o justify this type of seizure, officers need only 'reasonable suspicion' -- that is, a particularized and objective basis for suspecting the particular person stopped of breaking the law." Heien v. North Carolina, 574 U.S. 54, 60 (2014) (citation and quotation omitted); see Delaware v. Prouse, 440 U.S. 648, 663 (1979); United States v. Hanel, 993 F.3d 540, 543 (8th Cir. 2021). "Any traffic violation, however minor, provides probable cause for a traffic stop." United States v. Hollins, 685 F.3d 703, 706 (8th Cir. 2012) (quotation omitted). "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Whren v. United States, 517 U.S. 806, 813 (1996).

Here, the district court concluded that Corporal Fischer's traffic stop was justified by reasonable suspicion of criminal activity and by probable cause to believe that a violation of the traffic laws was occurring. After Detective Martens reported suspicious activity at the Walgreens, Fischer observed Virrueta, whose appearance

matched the booking photo Fischer obtained, enter the apartment complex with the woman Martens saw at the Walgreens. Martens confirmed the booking photo matched the man he saw at the Walgreens. Fischer then saw the man drive away from the complex in the Grand Prix. Fischer had learned Virrueta had no valid driver's license, an obvious South Dakota traffic violation.

On appeal, Virrueta contends, as he did in the district court, that Fischer could not have identified him as the driver of the car, pointing to its tinted windows and Fischer's use of a flashlight in approaching the Grand Prix. The district court credited Fischer's testimony that his location allowed him to see drivers as they slowed down and that he recognized Virrueta as the driver of the Grand Prix. The court noted that at the time of the stop, 9:38 p.m., it was dusk but not completely dark, and that Fischer's body camera footage showed that the Grand Prix's windows were transparent enough for him to have made out the driver from his vantage point.

"A credibility finding made by a magistrate judge after a hearing on the merits of a motion to suppress is virtually unassailable on appeal." United States v. Shafer, 608 F.3d 1056, 1065 (8th Cir. 2010) (quotation omitted). "[T]he assessment of a witness's credibility is the province of the trial court." United States v. Rutledge, 61 F.4th 597, 601 (8th Cir. 2023). In this case, our review of the suppression hearing exhibits does not show "extrinsic evidence that contradicts [Fischer's] story." United States v. Harper, 787 F.3d 910, 914 (8th Cir. 2015) (quotation omitted). We agree with the district court that the traffic stop was valid.

**B. The Extended Stop and Vehicle Search.** Virrueta next argues that Fischer unconstitutionally extended the traffic stop "in order . . . to find a reason to search Virrueta's vehicle." After making a traffic stop, an officer "may lawfully check the driver's license and registration, ask the driver about his destination and purpose, and request that the driver sit inside the patrol car." United States v. Brown, 345 F.3d 574, 578 (8th Cir. 2003). "A seizure that is justified solely by the interest in issuing

-5-

a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Illinois v. Caballes, 543 U.S. 405, 407 (2005). However, based on the totality of the circumstances, an officer may extend the traffic stop if he develops reasonable suspicion of additional criminal activity. United States v. Davis, 943 F.3d 1129, 1132 (8th Cir. 2019).

Here, Fischer had ample justification to extend the traffic stop and then to search the Grand Prix. The odor of marijuana Fischer smelled as he approached the vehicle gave him reasonable suspicion to extend the stop. United States v. Binion, 570 F.3d 1034, 1039 (8th Cir. 2009). We have repeatedly held that the odor of marijuana emanating from a vehicle during a traffic stop also gives the officer probable cause to search the vehicle. See United States v. Smith, 789 F.3d 923, 928-29 (8th Cir. 2015), and cases cited. Under the automobile exception to the Fourth Amendment's warrant requirement, an officer may search a vehicle without a warrant if, "given the totality of the circumstances, a reasonable person could believe that there is a fair probability that contraband or evidence of a crime would be found in a particular place." United States v. Rodriguez, 414 F.3d 837, 843 (8th Cir. 2005).

Virrueta contends that he provided an adequate explanation for the smell when he told Fischer that he had smoked marijuana prior to the stop. But Fischer testified he smelled raw marijuana, which is sufficient to establish probable cause to search a vehicle. See, e.g., Smith, 789 F.3d at 929; United States v. Winters, 221 F.3d 1039, 1042 (8th Cir. 2000). The odor of marijuana and Virrueta's subsequent behavior -- rolling up his car window, locking the doors, and carrying a bottle of cologne to Fischer's police vehicle -- gave Fischer a particularized basis for extending the stop and probable cause to search Virrueta's vehicle.

**C. The Parole Agent's Consent to Search.** Virrueta further argues that Corporal Fischer improperly relied on parole agent Oelkers' consent to search the vehicle. We disagree. Virrueta's parole agreement provides that he will submit his

person and vehicle to search and seizure at any time, with or without a warrant, "whenever reasonable suspicion is determined by a parole agent or law enforcement." See generally United States v. Hamilton, 591 F.3d 1017, 1022-23 (8th Cir.), cert. denied, 562 U.S. 909 (2010). Here, law enforcement advised Oelkers that Virrueta was driving a car from which the odor of marijuana emanated, without a valid license and outside his permitted territory without her permission, and that Virrueta admitted he recently smoked marijuana. Based on these multiple parole violations, Oelkers consented to the officers' searching Virrueta's vehicle. The district court did not err in concluding that parole agent Oelkers' consent was an independent basis for the vehicle search.

The judgment of the district court is affirmed.

_____